UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONYA J. WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:15-cv-01487-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Tonya J. Walker is not disabled.

## Introduction

Ms. Walker applied in December 2012 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging she has been disabled since July 28, 2012. Acting for the Commissioner of the Social Security Administration following a hearing on May 22, 2014, administrative law judge Joan Ho issued a decision on June 4, 2014, that Ms. Walker is not disabled. The Appeals Council denied review of the ALJ's decision on August 27, 2015 (R. 4), rendering the ALJ's

decision for the Commissioner final.  Ms. Walker timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Walker's assertions of error concern aspects of both the Appeals Council's decision and the ALJ's decision.  In general, her arguments relate to failures to evaluate properly the effects of Ms. Walker's arthritis and right shoulder impairments on her ability to work.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Walker's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Ms. Walker is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I.  **The ALJ's Sequential Findings**

Ms. Walker was born in 1961, was 50 years old as of her alleged onset date, and was 52 years old at the time of the ALJ's decision. Ms. Walker worked for many years in assembly plants. Her alleged onset date of July 28, 2012, is the date she stopped working at an automobile manufacturing plant because she believed arthritis and shoulder problems made her no longer capable of performing her job duties. Ms. Walker had worked as a sealer on the assembly line, requiring her to use a caulk gun to apply sealant and then a spatula or brush to smooth the sealant. (R. 8-9). She also worked as a buffer and sander, requiring the use of a hand sander and polishing tools on car bumpers as cars came off the line.

Ms. Walker does not contest the ALJ's findings at steps one through three of the sequential analysis: She has not worked since her alleged onset date (step one); her severe impairments are rheumatoid arthritis of the right shoulder and status post right shoulder replacement (step two); and her impairments do not satisfy a listing (step three).

For purposes of steps four and five, the ALJ decided Ms. Walker has the residual functional capacity (RFC) to perform a modified range of light work. She found her capable of (1) sitting, standing, or walking six hours in an eight-hour work day; (2) lifting and carrying 10 pounds frequently and 20 pounds occasionally; (3) frequently climbing ramps and stairs, and balancing, stooping, kneeling, crouching, and crawling; (4) occasionally climbing ladders, ropes, and scaffolds; and

(5) occasionally reaching overhead with the right upper extremity. With this RFC and based on the testimony of a vocational expert, the ALJ determined Ms. Walker can perform her past relevant work as a sealer, buffer, and automobile assembler. (R. 31). Accordingly, the ALJ concluded at step four that Ms. Walker is not disabled, and did not reach step five.

## II.  Ms. Walker's Assertions of Error

Ms. Walker's assertions of error relate to the Appeals Council's and the ALJ's failures to evaluate properly the functional limitations related to her rheumatoid arthritis and right shoulder impairments. The court first provides a summary of Ms. Walker's job history, impairments, and medical treatment as a backdrop for evaluating her contentions.

### A. Ms. Walker's Job History, Impairments, and Treatment

Ms. Walker stopped working in July 2012 because rheumatoid arthritis and right shoulder pain made her unable to perform her job on an automobile assembly line. Her work was physically demanding and fast-paced. She stood all day and constantly used her arms. Ms. Walker, who is right-handed, had been responsible for sanding and buffing front and back car bumpers as cars came off the line. Most recently her job required her to apply a sealant with a caulk gun on certain parts of a car and then smooth the sealant with a spatula or brush. (R. 8-9). She had 25 seconds to squirt the sealant and then spread and smooth it out. (R. 9). Ms. Walker had a lengthy work history. She had worked at the automobile plant for about four years, and had previously worked at a factory for about 11 years. (R. 11).

Ms. Walker first received treatment for right shoulder problems in 2009, when she was diagnosed with a frozen shoulder. (R. 268). She was treated with surgical manipulation of the shoulder in February 2009, but her pain, stiffness, and weakness symptoms only partially improved. (*Id.*) Based on persistent problems with the shoulder and the development of symptoms in other joints, Ms. Walker was diagnosed with rheumatoid arthritis at that time and prescribed various medications to treat her arthritis symptoms. (*Id.*). In July 2011, her rheumatologist (Dr. Thornberry) re-evaluated her condition and the efficacy of her medications, and found that Ms. Walker had a reduced range of motion in her right shoulder. (R. 337). By the spring of 2012, Ms. Walker reported to her internal medicine physician that she was trying to cope with her shoulder problems, but working on the assembly line made that difficult sometimes. (R. 254). By June, Ms. Walker reported she hoped to find part-time work that was different from her assembly-line job. By July, Ms. Walker stopped working because she could not use her right arm and shoulder.

In September 2012, Ms. Walker's rheumatologist recommended that she have her right shoulder evaluated by an orthopedic surgeon. By this point, Ms. Walker had noticed crunching and popping in the shoulder and had difficulty raising the shoulder above 45 degrees. (R. 309). That condition—the sensation of grinding, cracking, or grating in the body—is known as "crepitus." Ms. Walker met with an orthopedic surgeon (Dr. Misamore) in October 2012. His examination revealed limited range of motion at the right shoulder. X-rays showed "complete joint space

7

loss resulting in bone on bone articulation." (R. 269). The surgeon diagnosed Ms. Walker with "[a]dvanced glenohumeral inflammatory arthritis," and advised Ms. Walker that total shoulder replacement was an option. (*Id.*). Ms. Walker continued to suffer, and on December 18, 2012, she told Dr. Misamore that she had decided to have surgery to replace her right shoulder. Dr. Misamore performed a total right shoulder arthroplasty on January 10, 2013. (R. 355). The surgery confirmed that Ms. Walker had bone on bone articulation: there was a "complete loss of articular cartilage over the entire humeral head." (R. 356). Her biceps tendon was also absent from the right shoulder. (*Id.*).

### B. Post-surgical Treatment

In the year following her surgery, Ms. Walker was seen by her rheumatologist, her surgeon, and by physical therapists. She also underwent a consultative physical examination, conducted by Dr. Victoria Martin, at the request of the Indiana Disability Determination Bureau on February 1, 2013, about two weeks after her surgery. At that time, Ms. Walker's right arm was in a sling and she could not use her right shoulder at all. She could, however, use her hands to perform fine and gross motor movements, including to button and zip and to pick up paperclips. (R. 380). Dr. Martin's report described Ms. Walker's complaint of periodic flare-ups of rheumatoid arthritis every three months and illnesses related to immune suppression from medication. (*Id.*). Dr. Martin stated that it was difficult to evaluate the future extent of Ms. Walker's functional abilities after her recovery from surgery, although she expected there would be some continuing

8

impairment. She noted too that flare-ups from arthritis could affect work abilities when they occur. (*Id.*).

The medications Ms. Walker takes for rheumatoid arthritis act as suppressants to the immune system, but without the medication her arthritic symptoms are exacerbated. In the spring of 2013, she was required to discontinue her medications for a period to allow for healing of other problems, including sinusitis, an upper respiratory tract infection, and a skin infection. (R. 386). She was able to resume taking her arthritis medication in the summer, was given an increased dosage in the fall to decrease hip discomfort, and her dosage was decreased to a normal level in early 2014. (*See* R. 449 (July appointment) 438 (October appointment), and 433-34 (January 2014 appointment)).

Ms. Walker saw her surgeon for follow-up examinations in April 2013, May 2013, July 2013, and in January 2014. In May 2013, the surgeon discontinued Ms. Walker's physical therapy appointments because of the possibility that a nerve injury was interfering with Ms. Walker's recovery of strength in her right shoulder. (R. 423). She was experiencing significant weakness, swelling, and pain at that time. And although Ms. Walker's strength and range of motion continued gradually to improve from April 2013 through January 2014, even by her last follow-up appointment with the surgeon (on January 15, 2014, more than a year after the surgery), she was still in a recovery phase. The surgeon's notes from January 15, 2014 report that Ms. Walker's "recovery is on schedule," but that her right shoulder still exhibits weakness in flexion, abduction, and external rotation. (*See* R. 419).

### C. The RFC is not supported by substantial evidence.

The ALJ's RFC determination is materially identical to RFC evaluations made by the state agency reviewing doctors dated February 19, 2013, and May 20, 2013, respectively.  (*See* R. 75-95).  The exertional, postural, and manipulative limitations adopted by the ALJ are identical to those chosen by the state agency doctors, except the ALJ found Ms. Walker could only "occasionally reach overhead with the right upper extremity" (R. 26), while the state agency doctors opined that Ms. Walker's ability to reach overhead on the left and right was "limited" and restricted to occasional.  (*E.g.,* R. 81-82).

These determinations fail to rationally account for the actual progress—or lack thereof—of Ms. Walker's rheumatoid arthritis and right shoulder impairments.  First, as Ms. Walker contends, the RFC opinion adopted by both the state agency reviewing doctors are "projections" measured from the date of Ms. Walker's shoulder replacement surgery on January 10, 2013, to one year after surgery.  (*E.g.,* R. 82).  According to these doctors' reports, their opinions (dated in February 2013 and in May 2013) are based on post-operative notes that Ms. Walker is "doing well with no complications," her rheumatoid arthritis is "under good control" with medication, and at her consultative physical examination on February 1, 2013, the findings were "normal" except for her right shoulder because of recent surgery.  (*Id.*) These doctors did not review the actual progress of Ms. Walker's recovery from the complete replacement of her right shoulder, or consider her orthopedist's opinions in May 2013 that Ms. Walker's recovery was behind schedule, in July 2013 that she

10

still exhibited poor strength, and in January 2014 that she was still in recovery from shoulder replacement.  Neither did the reviewing doctors evaluate Ms. Walker's functional capacity starting from her alleged onset date in July 2012, when she quit her fast-paced, assembly-line job that required the constant use of her right upper extremity.  Because of these material omissions in the factual underpinnings of the doctors' projections of Ms. Walker's capacity, their opinions cannot serve as rational support for the ALJ's determination of Ms. Walker's RFC.

      The ALJ likewise independently failed to evaluate information material to a determination of Ms. Walker's disability.  Although the ALJ did review medical records extending to January 2014, when Ms. Walker last saw her orthopedic surgeon, the ALJ did not analyze whether Ms. Walker's impairments (her rheumatoid arthritis and right shoulder impairments, eventually requiring complete surgical replacement) made her unable to engage in substantial gainful activity for at least a continuous period of 12 months.  42 U.S.C. § 423(d)(1)(A).  While the ALJ made the conclusory statement that Ms. Walker was not "under a disability" from her onset date through the date of the ALJ's decision rendered June 4, 2014 (R. 32), there is no analysis of when Ms. Walker gained the capacity to work at the levels reflected in the RFC.  The ALJ did not question Ms. Walker's inability to work as of her June 2012 alleged onset date.  She did not suggest that Ms. Walker was capable of doing her job at the automobile plant when the orthopedic surgeon found in October 2012, that Ms. Walker had limited range of motion at the right shoulder and x-rays showed "complete joint space loss resulting in bone on

bone articulation." (R. 269).[1] The ALJ did not suggest Ms. Walker was capable of doing her job at the automobile plant in December 2012, when the surgeon scheduled a complete shoulder replacement. The ALJ did not suggest Ms. Walker was capable of doing her job in May 2013, when her physical therapist restricted her from lifting anything off the floor (a restriction that was not even evaluated by the ALJ). And the ALJ did not suggest that Ms. Walker was capable of doing her job at the automobile plant in January 2014, when she was still in recovery from right shoulder replacement.

In this case where there is strong evidence that Ms. Walker's impairments due to rheumatoid arthritis and the condition of her right shoulder at least made her incapable of working for a continuous period of more than 12 months, the court must find that the ALJ's failure to evaluate the existence of a requisite period of disability requires remand.

### D. The Credibility Determination

The court is also convinced that the ALJ's credibility determination is patently erroneous. The state agency reviewing doctors concluded, on their review of the medical evidence in February and May 2013, that Ms. Walker's statements about the intensity, persistence, and functionally limiting effects of her symptoms were, in fact, "substantiated by the objective medical evidence alone" and thus

---

[1]    Oddly, the ALJ referred to Ms. Walker's right shoulder replacement and rheumatoid arthritis as "alleged." (R. 27). The court believes the modifier was a typographical error caused by the ALJ's use of a template document in preparing her decision. Her finding that these impairments were severe takes them out of the realm of "alleged."

12

credible. (*E.g.,* R. 80). Yet the ALJ (without even acknowledging these opinions) determined that Ms. Walker's statements were "not entirely credible." She gave four main reasons: (1) that Ms. Walker's daily living activities were "not as limited as one would expect given the claimant's complaints of disabling symptoms and limitations," including that she could wash her hair and hook her bra, (2) that Ms. Walker had good results from surgery and had made progress in her rehabilitation, which was on schedule at the one-year mark after surgery, (3) that Ms. Walker's hip pain is not corroborated by an x-ray and she has been able to relieve the pain through bicycling and stretching exercises, and (4) that Ms. Walker's complaints of hand pain and difficulty grasping things were not corroborated by an x-ray and she was able to exhibit good hand movements at her February 1, 2013 consultative examination.

     None of these reasons rationally undermines Ms. Walker's complaints about symptoms that would prevent her from going back to the automobile factory jobs requiring the constant use of her right upper extremity. The daily living activities cited by the ALJ are not remotely like the activities required by the jobs the ALJ determined Ms. Walker can go back to performing on a full-time basis. Washing one's hair in a way to minimize shoulder use and hooking a bra once or twice a day is hardly comparable to the demands of Ms. Walker's factory job. The fact Ms. Walker was still in rehabilitation one year after her right shoulder surgery does not detract from her complaints; *it supports them*. The ability to relieve arthritic hip pain through exercise and riding a bike also sheds no light on Ms. Walker's use of

her right upper extremity, and does not detract from the fact that she actually does suffer hip pain. And, finally, the hand manipulative abilities demonstrated by Ms. Walker at her February 1, 2013 examination were done while her right arm was tucked to her body and in a sling. Because of these logical errors, combined with the fact the ALJ failed to acknowledge Ms. Walker's long work history doing physically demanding and fast-paced work requiring the constant use of her right arm, the court is convinced that the ALJ's credibility determination is patently erroneous, requiring remand.

### E. Other Issues on Remand

Ms. Walker's other alleged errors can be revisited by the ALJ on remand. The ALJ should analyze (1) the physical therapist's view of Ms. Walker's lifting abilities; (2) the consultative examiner's statement that flare-ups from rheumatoid arthritis (which Ms. Walker's says she suffers and the examiner did not apparently doubt were consistent with her disease) affect a person's ability to work; and (3) the orthopedic surgeon's opinion rendered after the ALJ's decision was issued, but which Ms. Walker submitted to the Appeals Council for consideration.

With respect to the Appeals Council's treatment of the surgeon's opinion, the court agrees with Ms. Walker that *Stepp v. Colvin,* 795 F.3d 711 (7th Cir. 2015), controls and there is no material difference between the Appeals Council's treatment of evidence first submitted to it in *Stepp* and the Appeals Council's treatment of the surgeon's opinion Ms. Walker first submitted to it in this case. The court therefore can determine whether the Appeals Council erred by failing to

14

consider the opinion as new and material evidence. Without doubt the surgeon's opinion about Ms. Walker's functional capacity is "material" within the meaning of 20 C.F.R. § 404.970(b). It may also be considered "new" in the sense that it was not in existence at the time of the administrative hearing, though it is not clear to the court that the opinion should be considered "not available" to Ms. Walker at that time. *See* 795 F.3d at 725. As the court understands it, the opinion is not a treatment note which Ms. Walker was incapable of obtaining before the hearing but is an opinion based on treatment that occurred before the hearing. The court need not definitely rule, however, whether the Appeals Council committed error because this matter must be remanded for other reasons. The surgeon's opinion on Ms. Walker's functional capacity can be, and should be, considered by the ALJ on remand.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Ms. Walker is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: August 26, 2016

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system